# United States District Court
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | Case Number: 4:15-CR-00199-016 |
| v. § | Judge Mazzant |
| § | |
| CARL WAYNE JESSIE § | |

## MEMORANDUM OPINION & ORDER

Pending before the Court is Defendant's Motion for Compassionate Release (Dkt. #509). The Court, having considered the Motion, the response, the record, and the applicable law, finds that the motion must be **DENIED**.

## I. BACKGROUND

On January 26, 2017, Defendant Carl Wayne Jessie pleaded guilty to Conspiracy to Possess with the Intent to Distribute Cocaine, a violation of 21 U.S.C. § 846 and 21 U.S.C. § 841(b)(a). The Court sentenced Jessie to 130 months' imprisonment (Dkt. #446). Jessie is serving his sentence at Bastrop FCI. *See* https://www.bop.gov/inmateloc/ (Register Number: 23900-078). The Bureau of Prisons ("BOP") projects he will be released on February 8, 2025.

Jessie seeks compassionate release based on his Body Mass Index ("BMI"), hypertension, abnormal heart rate, and his former smoking habits, arguing they constitute "extraordinary and compelling reasons" to grant a sentence reduction (Dkt. #509). The Government opposes the sentence reduction, arguing Jessie has not demonstrated "extraordinary and compelling reasons" and a sentence reduction is unwarranted based on the § 3553(a) factors (Dkt. #511). Additionally, the Government contends Bastrop FCI provides the care needed to manage Jessie's health and that they have proper COVID-19 precautions in place (Dkt. #511).

## II. LEGAL STANDARD

A judgment of conviction imposing a sentence of imprisonment "constitutes a final judgment and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)); *see also* 18 U.S.C. § 3582(c). One such circumstance arises from 18 U.S.C. § 3582(c)(1)(A), the statute authorizing compassionate release. Under § 3582(c)(1)(A), a district court may grant a sentence reduction if it finds: (1) a defendant "fully exhausted all administrative rights"; (2) "extraordinary and compelling reasons warrant such a reduction"; (3) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and (4) such a reduction is appropriate "after considering the factors set forth in § 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A).

The First Step Act of 2018 made the first major changes to compassionate release since its authorization in 1984. Pub. L. 115-391, 132 Stat. 5194. Procedurally, the First Step Act removed the Director of the BOP as the sole arbiter of compassionate release. Instead, the law enabled a defendant to move for compassionate release directly in district court after exhausting their administrative rights. 18 U.S.C. § 3582(c)(1)(A). Prior to this change, the BOP retained sole gatekeeping authority over compassionate release petitions. *United States v. Brooker*, 976 F.3d 228, 232 (2d Cir. 2020). This resulted in underuse and mismanagement. *Id.*[1] Through the First Step Act, Congress sought to mitigate this by "increasing the use and transparency of compassionate release." Pub. L. 115-391, 132 Stat. 5194, 5239 (capitalization omitted).

---

[1] In 2013, a report from the Office of the Inspector General revealed that the BOP granted compassionate release to only an average of 24 incarcerated people per year. *See* U.S. Dep't of Just. Office of the Inspector General, *The Federal Bureau of Prisons' Compassionate Release Program* 1 (2013), https://www.oversight.gov/sites/default/files/oig-reports/e1306.pdf (last visited April 14, 2020). And of the 208 people whose release requests were approved by both a warden and a BOP Regional Director, 13% died awaiting a final decision by the BOP Director. *Id.*; *see also Extraordinary and Compelling: A Re-Examination of the Justifications for Compassionate Release*, 68 MD. L. REV. 850, 868 (2009) (noting that, in the 1990s, 0.01 percent of inmates annually were granted compassionate release).

Substantively, the First Step Act also modified the "extraordinary and compelling" reasons" determination. Congress never defined what constitutes "extraordinary and compelling," but rather delegated this determination to the Sentencing Commission.[2] By the text of § 3582(c)(1)(A), any sentence reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." However, since passage of the First Step Act, the Sentencing Commission has not updated its guidelines on compassionate release.[3] This has created significant disagreement across the country whether the pre-First Step Act policy statement is still "applicable," and thus binding on district courts.

The Fifth Circuit recently joined the Second, Fourth, Sixth, Seventh, and Tenth Circuits in concluding that § 1B1.13 is no longer binding on a district court. *See United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021) ("The district court on remand is bound only by § 3582(c)(1)(A)(i) and, as always, the sentencing factors in § 3553(a). In reaching this conclusion, we align with every circuit court to have addressed the issue."). Under this new framework, § 1B1.13 still binds district courts on motions made by the BOP, but, for motions made directly by an inmate, district courts are free to consider any relevant fact in determining if "extraordinary and compelling reasons" exist. *See Brooker*, 976 F.3d at 235–36 (because the First Step Act allows both inmates and the BOP to file compassionate-release motions under § 3582(c)(1)(A), § 1B1.13 now applies only when such motions are made by the BOP and is inapplicable when a compassionate-release motion is made by a defendant); *United States v. McCoy*, 981 F.3d 271, 282 (4th Cir. 2020) ("A sentence reduction brought about by motion of a defendant, rather than

---

[2] In 28 U.S.C. § 994(a)(2), Congress granted the Commission broad authority to promulgate "general policy statements regarding application of the guidelines or any other aspect of sentencing or sentence implementation that in the view of the Commission would further the purposes set forth in [18 U.S.C. § 3553(a)(2)]." And in 28 U.S.C. § 994(t), "Congress instructed the Commission to 'describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.'" *United States v. Garcia*, 655 F.3d 426, 435 (5th Cir. 2011) (quoting 28 U.S.C. § 994(t)).

[3] The Sentencing Commission currently lacks a quorum to issue new guidelines.

the BOP, is not a reduction 'under this policy statement.'"); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) (agreeing with *Brooker* and holding that there is no "applicable" policy statement for § 3582(c)(1)(A) motions after the First Step Act); *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020) ("Until the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release").

Despite this newfound discretion, district courts are not without guidance in determining whether "extraordinary and compelling reasons" exist. First, Congress has explicitly limited that "[r]ehabilitation of the defendant *alone* shall not be considered an extraordinary and compelling reason. 28 U.S.C. § 994(t) (emphasis added). Second, the Sentencing Commission's policy statement and commentary is still persuasive. *United States v. Logan*, No. 97-CR-0099(3), 2021 WL 1221481 (D. Minn., Apr. 1, 2021) (finding that § 1B1.13's definition of "extraordinary and compelling" should be afforded "substantial deference . . . as such deference is consistent with the intent (even if not mandated by the letter) of § 3582(c)(1)(A)"). Application Note 1 of the policy statement provides that "extraordinary and compelling reasons" exist when: (1) a terminal illness or other medical condition "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility"; (2) a defendant, who is at least 65 years old, "is experiencing a serious deterioration in physical or mental health because of the aging process" and "has served at least 10 years or 75 percent of his or her term of imprisonment"; and (3) a defendant has minor children without a caregiver or with an incapacitated spouse or partner who needs the defendant to be the caregiver. U.S.S.G. § 1B1.13, n.1(A)-(C). Lastly, BOP Program Statement 5050.50 ("PS 5050.50"), amended after passage of the First Step Act, describes the factors BOP considers grounds for compassionate release. *See* PS 5050.50 ¶¶ 3–6. These grounds

are similar to the reasons identified by the Sentencing Commission, but also include a list of factors like rehabilitation and circumstances of the offense. *Id.*[4]

Building from this guidance, district courts across the country have identified additional situations where "extraordinary and compelling reasons" exist. First, while rehabilitation alone is not an "extraordinary and compelling" reason for a sentence reduction, it can be a significant factor warranting a sentence reduction when an inmate has an otherwise qualifying condition.[5] *See United States v. Rodriguez*, 451 F.Supp.3d 392, 405 (E.D. Pa. 2020) (noting that the Sentencing Commission itself interpreted § 3582(c)(1)(A) as allowing consideration of an inmate's rehabilitation). If an inmate demonstrates a long, comprehensive record of rehabilitation, it goes to whether injustice would result if they remain incarcerated. *See Brooker*, 976 F.3d at 238 (identifying "the injustice of [a] lengthy sentence" as a factor that may weigh in favor of a sentence reduction). Second, courts consider any changes in law and the sentencing guidelines when determining if a sentence is extraordinary. For example, courts grant compassionate release at a remarkable rate for inmates subject to the now abolished § 924(c) sentence-stacking. *See McCoy*, 981 F.3d at 285 ("As the court observed in Bryant, multiple district courts have concluded that the severity of a § 924(c) sentence, combined with the enormous disparity between that sentence and the sentence a defendant would receive today, can constitute an 'extraordinary and compelling' reason for relief under § 3582(c)(1)(A)"). Though Congress did not retroactively eliminate § 924(c) sentence-stacking, courts consider whether the outdated policy warrants relief on a

---

[4] PS 5050.50's nonexclusive factors are: "the defendant's criminal and personal history, nature of his offense, disciplinary infractions, length of sentence and amount of time served, current age and age at the time of offense and sentencing, release plans, and '[w]hether release would minimize the severity of the offense.'" *United States v. Saldana*, 807 F. App'x 816, 819 (10th Cir. 2020) (quoting PS 5050.50 ¶ 7).

[5] 18 U.S.C. § 3142(g) aids the Court in determining whether a defendant is a danger to the community. Applicable factors include: "the nature and circumstances of the offense," "the person's character, physical and mental condition, family ties, employment, . . . criminal history," and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

case-by-case basis.⁶

Even if extraordinary and compelling reasons exist, they must outweigh the 18 U.S.C. § 3553(a) factors to warrant sentence reduction. *See* 18 U.S.C. § 3582(c)(1)(A). These factors are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and sentencing range [provided for in the U.S.S.G.] . . .

(5) any pertinent [Sentencing Commission] policy statement . . .

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

*Id.* § 3553(a).

### III. DISCUSSION

Jessie asks for a sentence reduction based on his BMI, hypertension, abnormal heart rate, and his former smoking habits. Jessie argues these medical conditions, coupled with the ongoing COVID-19 pandemic, warrant a sentence reduction. The Government argues Jessie's conditions

---

⁶ *See* Shon Hopwood, *Second Looks & Second Chances*, 41 CARDOZO L. REV. 83, 123-24 (2019) (arguing Congress did not make § 924(c) sentence stacking retroactive because it did not want to make all inmates "*categorically*" eligible for sentencing relief, but Congress meant for relief from draconian sentences to apply "*individually*")

are not severe enough to qualify for compassionate release.

Although Jessie has met § 3582(c)(1)(A)'s exhaustion requirement, he has not met the statute's requirement that "extraordinary and compelling reasons" exist warranting a reduction of his sentence. Jessie's motion, therefore, must be denied.

## A. Jessie Has Met § 3582(c)(1)(A)'s Exhaustion Requirement.

Jessie's compassionate release motion may only be considered if he first meets § 3582(c)(1)(A)'s exhaustion requirement. Courts may not consider a modification to a defendant's sentence under § 3582(c)(1)(A)(i) unless a motion for such a modification is properly made by the Director of the BOP or by a defendant who has fully exhausted their administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Fully exhausting administrative remedies requires a denial by the warden of a defendant's facility or waiting thirty days without receiving a response to a request. *Id.*[7]

Section 3582(c)(1)(A)'s exhaustion requirement is not waivable. *See United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) ("Because the statutory language is mandatory—that a prisoner must exhaust their BOP remedy before filing in district court—we must enforce this procedural rule . . ."); *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020) ("While the Court is well aware of the effects the Covid-19 pandemic . . . § 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse Reeves' failure to exhaust his administrative remedies or to waive the 30-day waiting period."). If a defendant has not sought relief from the BOP, or has not waited thirty days since seeking relief, the Court may not consider their motion.

---

[7] BOP regulations define "warden" to include "the chief executive officer of . . . any federal penal or correctional institution or facility." 28 C.F.R. § 500.1(a); *United States v. Franco*, 973 F.3d 465, 468 (5th Cir. 2020); *c.f. United States v. Campagna*, 16 Cr. 78-01 (LGS), 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020) (holding that "the denial of Defendant's request by the Residential Re-entry Manager suffices to exhaust his administrative rights").

On July 29, 2020, Jessie asked the warden at Bastrop FCI to grant him compassionate release and was rejected. Jessie has, therefore, met § 3582(c)(1)(A)'s exhaustion requirement.

**B. Jessie Has Not Met § 3582(c)(1)(A)'s Requirement that "Extraordinary and Compelling Reasons" Warrant a Sentence Reduction.**

Jessie's compassionate release motion turns on his assertion that the risks to his health associated with COVID-19—coupled with his BMI, hypertension, an abnormal heart rate, and his smoking habits—constitute extraordinary and compelling reasons to reduce his sentence. Jessie's assertion fails because his conditions are not severe enough to constitute "extraordinary and compelling reasons" under § 3582(c)(1)(A)(i).

The Court has discretion to decide whether Jessie's conditions present "extraordinary and compelling reasons" warranting a sentence reduction. *See Shkambi*, 993 F.3d at 392–93. The Court is not bound by the Sentencing Commission's policy statement and may consider any relevant facts in evaluating Jessie's condition of incarceration. *Id.* Typically, courts consider whether a defendant suffers from a serious health condition, has a record of rehabilitation, the nature and circumstances of defendant's offense, and whether a sentence is based on outdated law. *See Brooker*, 976 F.3d at 238.

Rehabilitation alone cannot support a claim for sentence reduction, but may be considered as a factor in evaluating "extraordinary and compelling reasons." *See Brooker*, 976 F.3d at 237-38; *United States v. Hudec*, No. 4:91-1-1, 2020 WL 4925675, at *5 (S.D. Tex. Aug. 20, 2020). Despite COVID-19 changing the prison's operations, Jessie has successfully completed multiple BOP courses and programs. Jessie alleges he is focused on his personal goals: being a better father, overcoming his addiction, and obtaining financial security. Accordingly, the Court finds Jessie's rehabilitative record supports his release.

When considering if a defendant's health condition supports compassionate release, the

mere existence of COVID-19 in society cannot independently justify a sentence reduction. *See United States v. Miller*, No. 2:17-CR-015-D, 2020 WL 2514887, *2 (N.D. Tex. May 15, 2020) (citing *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)). For a defendant to be granted compassionate release based on COVID-19, the defendant must have a serious comorbidity and evidence the facility is not effectively controlling the spread of the virus. *See United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence.").

In the instant case, Jessie fails to show any health conditions that warrant compassionate release. Jessie is not subject to a terminal illness. Jessie's conditions do not substantially diminish his ability to provide self-care in prison. Jessie has comorbidities of COVID-19, but his health currently appears stable. Further, hypertension and BMI are insufficient to constitute "extraordinary and compelling reasons" alone unless combined with other extenuating circumstances. *See United States v. Manzano*, No. 16-cr-20593, 2020 WL 7223301, at *3–4 (E.D. Mich. Dec. 8, 2020) (collecting cases and finding hypertension and diabetes were "extraordinary and compelling" when combined with defendant's age and the lack of health protections implemented by her facility); *see also United States v. Guyton*, No. 11-271, 2020 WL 2128579, at *3 (E.D. La. May 5, 2020) (denying compassionate release for a 45-year-old with mild hypertension). The Government contends Jessie is classified as a "Care Level 2" which is stable chronic care (Dkt. #511 at p. 2). Bastrop FCI manages his medication and schedules routine medical evaluations (Dkt. #511 at p. 2). His age of 40 also does not support compassionate release. Therefore, Jessie's health conditions have proven manageable inside Bastrop FCI.

Absent COVID-19, Jessie would present no basis for compassionate release because his medical ailments are appropriately managed and do not impede his ability to provide self-care in the institution. The Government also claims the BOP is taking strict precautionary measures to prevent the spread of COVID-19. Further, Bastrop FCI reports zero active cases among inmates and only three active cases among staff. Federal Bureau of Prisons, *COVID-19 Cases*, https://www.bop.gov/coronavirus/ (last visited August 11, 2021). Jessie's records also indicate he was offered and refused to accept the Pfizer-BioNTech vaccine for COVID-19 on April 23, 2021.

Weighing the evidence, Jessie's rehabilitative efforts are impressive, but he fails to prove that his incarceration is "extraordinary and compelling" under § 3582(c)(1)(A)(i) framework. *See United States v. Stowe*, No. CR H-11-803(2), 2019 WL 4673725, at *2 (S.D. Tex. Sept. 25, 2019) (citation omitted) (stating that the defendant generally "has the burden to show circumstances meeting the test for compassionate release").[8]

Under the rule of finality, federal courts may not "modify a term of imprisonment once it has been imposed" unless one of a few "narrow exceptions" applies. *Freeman v. United States*, 564 U.S. 522, 526 (2011) (citing 18 U.S.C. § 3582(c)) (plurality op.); *see also Dillon*, 560 U.S. at 819 (same). Compassionate release is one of those exceptions, but a defendant must conform both to the procedural and substantive requirements of § 3582(c)(1)(A) for a court to modify a sentence. Because Jessie has failed to meet the controlling requirements for compassionate release set forth in § 3582(c)(1)(A)(i), his Motion must be denied.[9]

---

[8] Given Defendant's failure to meet § 3582(c)(1)(A)'s requirements, the Court need not address whether the applicable 18 U.S.C. § 3553(a) factors support a sentence reduction.

[9] In the alternative, the Court is also unable to order home confinement. The BOP has exclusive authority to determine where a prisoner is housed; thus, the Court is without authority to order home confinement. 18 U.S.C. § 3621(b); *see also United States v. Miller*, No. 2:17-CR-015-D (02), 2020 WL 2514887, at *1 (N.D. Tex. May 15, 2020) ("[N]either the CARES Act nor the First Step Act authorizes the court to release an inmate to home confinement.").

## IV. CONCLUSION

It is therefore **ORDERED** that Defendant's Motion for Compassionate Release (Dkt. #509) is **DENIED**.

**SIGNED this 13th day of August, 2021.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE